.Baxí'Lk, J.
The petitioner claims to be exempt frota military service in the army - of tbe Confederate States upon tbe ground that he is a policeman of the city of Raleigh. His claim is resisted in the return of the defendant upon the allegation that the petitioner is no't a policeman, but only a contractor to keep- tire .city pumps ia .order. *
The’testimony ,of tin1 Mayor of the city, together with the other proofs taken and died in the cause, satisfy us that the-petitioner is one of the city police, though, in addition to his duties as such, he has had assigned to him the charge of keepifkg the pumps in repair. Upon the facts thus appearing from the pleadings and’-proofs, the question arises, whether the petitioner -is entitled to exemption from conscription. This is a question of law, and it is our duty now to proceed .to its consideration.
*14 It is now generally, if not universally conceded, that the Confederate Congress-have no-power to order the conscription of State officers. The principle is well expressed by the Supreme Court of Appeals of Virginia, in the* opinion given in' the case of Burroughs vs. Peyton, and we express our full concurrence.in it. (i The State gov-' erninents are an essenlial part of our political system; for upon the separate and independent sovereignty^! the. States, the foundation of our confederation rests. All powers not delegated to the Confederate States by the Constitution, nor prohibited by it to the State, are reserved to the States' respectively, or to the people thereof; ’ ’ and the Confederate States guarantee to each State, republican form of government.
It is absurd to suppose that the government of the Confederate States can rightfully destroy the States which created it: and all the- powers conferred on it must: be understood to have been.given with the limitation, that' in exercising them, nothing shall 'be done to interfere with the independent exercise of its sovereign powers by each State. Congress-can have no right, therefore, to deprive a Míate of the services -of any officer, necessary to the action of its government; and the State itself, is the sole judge as to the officers that are necessary /pr that-purpose.’'.
We are not aware that the Confederate Congress have ever set up a claim to the exercise of a*power inconsistent witn this fundamental principle o. State h.a -reignty. On the contrary, in all the acts it has passed, granting exemptions from conscription, it has-expressly mentioned, in some form or other, State officers, as being entitled to exemption. Thus, in the act of April 21st, 1862, “all judicial and executive officers of State governments” are *15 exempted. In the act of the 11th October, 1862, which repeals that of April-, the officers, judicial and executive, of the State governments, áre again declared to be exemp•ted. The act of May the 1st, 1863, provides, that in addition to the State officers exempted by the act of October 11th, 1862, there shall be exempted all State officers whom the Governor, of any State may claim to have exempted fór the due administration of the government, and laws thereof; but this exemption shall not continue in any State after the adjournment of the next regular session of its Legislature, unless such Legislature shalll by law exempt, them from service' in the provisional army of the Confederate States.” . • ,
. It is unnecessary to consider the effect of these exemption; acts, because they are all repealed by the act of the 17th February, 1864, and State officers were "exempted in the following termj!: “The members of the several State Legislatures,'and such* other State officers as the Q'over-nors of the respective'States may certify to he necessary for the proper administration of the State governments.” If the petitioner he a State officer, and had he produced any such certificate in his behalf fro’m the Governor of this Slate, we must presume that the Confederate officers would have admitted it, and have 'exempted him accordingly ; hut he has failed-lo produce any such certificate, -and yet he insists, nevertheless, that iiis right to exemption is established by the action of our General Assembly. That* body, by an act ratified the 14th day of December, 1863, mentions several officers as “ necessary to carry on the operations of the Slate government,” for whom claims had been made, and obtained under the act of Congress of May, .1863, and then itself claims and exempts them from' conscription. Among the officers thus claimed to be ex *16 empt arc the “ Mayor and police of Raleigh.”’ See laws of extra session in Dec., 1863, cb. 14. That same body, at its extra session in May,' 1864, by a resolution ratified the 28th day of the month “ demands ” the exemption of the same, together with some other officers, prefacing it with a preamble, declaring ■“ that, the fearless and free discharge of the officers of the State is essential to the preservation of its sovereignty,” and that-" Congress has ho power to conscript State officers.'”
Has the Legislature of the State the right to •‘demand” these exemptions ? It is very decidedly our opinion that it has ; and that it has it, to the exclusion of every other department of the State government. It is clear beyond all question, that, within the limits of the written Constitution which the people of the State have imposed on the government, the legislative power is the supreme power in the State. Among its vast powers of legislation, which are unlimited and unrestricted, except by the Constitution, is that of ascertaining what officers, in additioá to those specified in the Constitution, are necessary for the efficient management of the. affairs of the State, and then of appointing the officers and prescribing their ditties. The powers of the other two great departments of goferumení, are ve»‘y different. To the judiciary is assigned the" power <•; expounding the Constitution and laws, while the Executive has, solely the power, to err-force their faithful execution. * From this, it seems to us, to follow as a logic; 1 sequence, that when it is shown that each State is the sole judge as to the officers who are necessary to the action of its- government, its Legislature, and its- Legislature alone, is the organ by which its judgment is to he ascertained and made known, It may well be, that the Legislature'van select and appoint the Gov *17 ernor as Its agent to certify its decision, but we are unable to find, among .tbe powers given to tbe Confederate • government, any authority .to confer upon tbe Governor ■of the State the power to decide, and then to certify bis decision, as to who are the necessary State officers.
The conclusion to which this course of reasoning lead* us, is, that the petitioner is entitled to his discharge, provided he is such an*officer as the Legislature has thq power to exempt as being necessary in tire administration of the laws of the State.' Police are defined by Webster to be lí a body of civil officers, especially in cities, for enforcing the laws.” Cities and towns are well known parts, rind very important parts, of the organization of the State ■: hence, the enforcement,of the laws within their chartered limits, must be a matter of great importance to the weal of the State itself. It follows, as a necessary consequence, that the police of all the larger towns, and especially of the capital of a State, must be deemed essential to-the full, complete and beneficial-action of the State government.
The conclusion is. that there is no error in the judgment - ■rendered in the Court below.
Judgment- for the petitioner.